JAN BYRD v. THE STATE.

No. 1558. Decided February 23, 1898.

1. Libel—Construction of Statute—Indictment.

Evidently article 727, Penal Code, intended something more in an indictment for libel than the bare statement that defendant had published certain libelous matter intended to injure another, and then set out in haec verba a mass of printed matter assumed to be libelous. The indictment, to be sufficient, should set out specifically one or more of the grounds stated in the statute, and with such certainty as that defendant may be put upon notice and come prepared to meet the particular libel which he is called upon to answer.

2. Same—Evidence—The Whole Libelous Statement.

On a trial for libel, the entire alleged libelous statement is admissible in evidence, as part and parcel of the same transaction, to show, in connection with the alleged libel, the animus of defendant.

APPEAL from the County Court of Parker. Tried below before Hon. I. N. ROACH, County Judge.

Appeal from a conviction for libel; penalty, a fine of $200.

Omitting formal portions, the charging part of the information is as follows, viz.: "On or about the 5th day of November, 1897, in the said county of Parker, and State of Texas, one Jan Byrd, late of said county and State, with force and arms did then and there unlawfully, with intent to injure the said John H. Lewis, make, write, print, publish, sell, and circulate a malicious statement of and concerning the said John H. Lewis affecting the reputation of the said John H. Lewis, to the tenor following:

### "'J. H. LEWIS.

"'Of all the mean, low-down, contemptible thieves that we have ever heard of, this John Henry Lewis heads the list, and to our regret and sorrow we are forced to acknowledge that he is a resident of this town. More than that, Success editor was under the necessity the other day to try to punch 85 cents out of the face of this polecat, after being told by this buzzard to go to hell because we had the audacity to tell him that we did not think he would ever pay us this small account. But instead of getting the 85 cents or going to the place whence the imp first sprung, we slapped his face good, and then as he did not seem to be content with this, we pitched in and satisfied the account, besides being fully repaid for having to contribute to the mayor's city fund.

"'Don't get this fellow mixed up with any other Lewis, for there is no other one in existence just like him. He is the same John Lewis, a thoroughbred bunco-steerer, who has plied his vocation of robbing nearly every man in the past ten years with whom he has had any dealings, in sums ranging from 15 cents to $500.

"'He is the same John Lewis who broke in business some ten years ago at Weatherford, after borrowing all the money he possibly could before the crash came, and among the unfortunates who befriended him at this time was one of our most prominent physicians, who got touched for $500, of which never a cent was returned.

"'And he is the same John Lewis who afterwards did business in this town in his sister-in-law's name with money that he had stolen formerly from unsuspecting and over-confiding friends.

"'And he is the John Lewis who now lives in style under the roof of a house he moved into after dark, which enabled him to beat carpenter's and lumber bill of nearly $600. He is the same vulture who has been making it a practice for several years to live off the sweat of other people's brows by buying on a credit where he could and never paying a cent, at the same time ingratiating himself in the good graces of all strangers who visit our town, and, by one pretext and another, succeeded in borrowing whatever sum possible.

"'One of the most rascally and scurvy tricks he ever succeeded in working was as follows: He rushed into a small store here at one time and asked for change for $1. The change was counted out and Lewis raked it into his own hand with the remark: 'I'll hand you the dollar to-morrow.'

"'It's impossible to find anything we can compare this fellow to, because his mode of thieving discounts the highwayman and midnight burglar 100 per cent. He owes various sums to nearly every negro woman in town for doing his family washing.

"'He is a calamity and disgrace to the town, a public nuisance that should be abated.'

"Contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State."

*Albert G. Boyle,* for appellant.—In prosecutions for libel, the bill of information, after setting out the alleged libelous article, must further allege that the libelous article conveys the idea, first, "that the person to whom it refers has been guilty of some penal offense;" or second, "that he has been guilty of some act or omission which, though not a penal offense, is disgraceful to him as a member of society and the natural consequence of which is to bring him into contempt among honorable persons;" or third, "that he has some moral vice or physical or mental defect or disease, which renders him unfit for intercourse with respectable society, and such as should cause him to be generally avoided;" or fourth, "that he is notoriously of bad or infamous character;" or fifth, "that any person in office or a candidate therefor is dishonest, and therefore unworthy of such office, or that while in office he has been guilty of some malfeasance rendering him unworthy of the place." Penal Code 1895, art. 727; Nordhaus v. State, 40 S. W. Rep., 804; McKie v. State, 37 Texas Crim. Rep., 544.

The published statement set out in the bill of information is inadmissible in evidence when there are no allegations in such bill of information showing what idea was intended to be conveyed by such published statement, and all of said published statement not relied on by the State for a conviction is inadmissible in evidence, because it would tend to prejudice the minds of the jurors against the defendant.

Upon the trial of this case the State offered in evidence a copy of the published statement set out in the bill of information, and at the time stated to the court that the State relied for a conviction upon the following sentences found in said published statement, to wit: "J. H. Lewis—Of all the low-down contemptible thieves that we have ever heard of this John Lewis heads the list;" and "it's impossible to find anything we can compare this fellow to, because his mode of thieving and stealing discounts the highwayman and midnight burglar 100 per cent." The defendant objected to the introduction in evidence of said published statement, because there were no allegations in the bill of information showing what idea it conveyed, and further, because the bill of information did not allege that said published statement accused the said John H. Lewis of a penal offense against the laws of Texas; and defendant further objected to all that part of said published statement not relied on by the State, because the same was immaterial and calculated to prejudice the minds of the jury against the defendant. The court overruled defendant's objections and permitted the State to introduce in evidence said published statement, to which ruling of the court the defendant then and there excepted. Defendant also urged this error in his motion for a new trial.

*Nat P. Jackson* and *Mann Trice,* Assistant Attorney-General, for the State.—The information is not subject to the objection urged against it. It charges that the defendant, with the unlawful intent to injure the prosecuting witness, did print, publish, sell, and circulate a malicious

statement of and concerning the said prosecuting witness affecting his reputation, etc., and then sets out in haec verba the publication—one manifestly violent enough to affect injuriously the reputation of an ordinary thief. It charges every element of the offense. The motion to quash was properly overruled.

HENDERSON, JUDGE.—Appellant was convicted of libel, and his punishment assessed at a fine of $200; hence this appeal.

Appellant made a motion to quash the information on the following grounds: "(1) Because it is not set out and alleged in said bill of information what idea was intended to be conveyed by the alleged publication imputed to the defendant, or that any idea at all was intended to be conveyed by said publication concerning the said John H. Lewis. (2) Because it is not alleged in said bill of information that the said alleged publication concerning John H. Lewis, and imputed to this defendant, conveyed the idea that the said John H. Lewis had been guilty of any penal offense known to the laws of the State of Texas, and does not show and allege to what penal offense the said alleged publication referred, if it referred to any penal offense whatever. (3) Because it is not alleged and pointed out in the said bill of information what act or acts or omissions referred to in the said alleged publication, or any part thereof, was disgraceful to the said John H. Lewis, as a member of society, and that the natural consequence of which said act was to bring him, the said John H. Lewis, into contempt among honorable persons. (4) Because it is not alleged in said bill of information that the alleged publication concerning the said John H. Lewis, and imputed to this defendant, conveyed the idea that the said John H. Lewis was notoriously of bad or infamous character. (5) Because it is not alleged and pointed out by innuendo, in said bill of information, to what particular acts of the said John H. Lewis the alleged publication referred, and because there is no allegation contained in said bill of information pointing out or giving direction to the language used in said alleged publication."

The indictment set out that the publication was made with intent to injure John H. Lewis, and that it was a malicious statement of and concerning the said John H. Lewis, affecting his reputation, and then set out the publication, which said publication, among other things, embodied the following: "Of all the mean, low-down, contemptible thieves that we have ever heard of, this John Henry Lewis heads the list; and, to our regret and sorrow, we are forced to acknowledge that he is a resident of this town;" and "it's impossible to find anything we can compare this fellow to, because his mode of thieving and stealing discounts the highwayman and midnight burglar 100 per cent." The motion to quash was overruled by the court, and appellant assigns this action of the court as error. The contention of appellant is that under article 727, Penal Code 1895, which more specifically defines the character of libel for which one may be prosecuted, the pleader should have set forth one or more of said

grounds; that is, if the libel was on the ground that it charged that prosecutor had been guilty of some penal offense, this should have been stated in the indictment; or if it was intended to charge appellant with having said that prosecutor had been guilty of some act or omission, which, though not a penal offense, was disgraceful to him as a member of society, and the natural consequence of which is to bring him into contempt among honorable persons, that this should be stated in the indictment. This contention is in accord with the decisions of this court in McKie v. State, 37 Texas Criminal Reports, 544, and Nordhaus v. State, 40 Southwestern Reporter, 804. Taking the alleged libelous publication in this case, the prosecution might possibly be maintained under it on the first, second, or fourth subdivisions of article 727, Penal Code, 1895, and the counts might be set out in the indictment charging the libel under all of said subdivisions; and in such case the transaction could be conducted on all of said counts. Where it is not stated in the information under which particular subdivision the prosecution is to be maintained, and the alleged libelous matter, as in the present case, is voluminous, and susceptible of various interpretations, the court will be left to grope its way through a great mass of matter in order to cull out the libelous matter charged; and, more than that, appellant would not come prepared to meet the particular libel which he was called upon to answer. Evidently, the statute intended something more than the bare statement that a defendant had published certain libelous matter intended to injure another, and then set out in haec verba a mass of printed matter assumed to be libelous. There is no difficulty in this matter if the statute be properly followed in setting out the libel, and there can be done in the submission of the case, it was equally necessary when it was presented in court by the plea. Though proper, this charge had no to the first subdivision under article 727, Penal Code 1895, to the effect that said written matter charges that the prosecutor had been guilty of some penal offense, to wit, theft. If this course was found necessary to be done in the submission of the case, it was equally necessary when it was presented in court by the plea. Though proper, this charge had no support in specific allegations in the indictment.

Appellant further contends that the whole of said paper containing the alleged libel should not have been admitted in evidence, as it contained other matter not pertinent to the issue submitted by the court to the jury. To this proposition we can not agree. It was a part and parcel of the same transaction, and, in connection with the alleged libelous matter, would indicate or show the animus of the appellant. It was a part of the res gestae of the publication. It is not necessary to notice the other matters assigned as error. The judgment is reversed, and the prosecution ordered dismissed.

*Reversed and dismissed.*