## WILLIE MATTHEWS v. STATE.

No. A-1304.   Opinion Filed February 22, 1913.

(130 Pac. 125.)

1.  **TRIAL—Instructions—Circumstantial Evidence.** Where a case de-
pends on circumstantial evidence alone, the court should instruct
the jury that they should acquit the defendant, unless the cir-
cumstances proven are of such a conclusive character as to ex-
clude every other reasonable hypothesis save that of the defend-
ant's guilt.

2.  **COURTS—Exact Justice to All.** The accident of birth and the arti-
ficial distinctions of society are not recognized by the law, and
this court cannot consider any man's wealth or social position,
or look at the color of his skin, but must dispense the same even-
handed and exact justice to all alike.

3.  **LARCENY—Evidence—Sufficiency.** For circumstances held not to
be sufficient to sustain a verdict of grand larceny, see opinion.

(Syllabus by the Court.)

*Appeal from District Court, Logan County;*
*A. H. Huston, Judge.*

Willie Matthews and another were convicted of grand lar-
ceny and their punishment assessed at confinement in the peni-
tentiary for five years, and defendant Willie Matthews appeals.
Reversed and remanded.

*McGuire & Smith,* for appellant.

*Smith C. Matson* and *Joseph L. Hull,* Asst. Attys. Gen.,
for the State.

FURMAN, J. This is a case depending entirely upon cir-
cumstantial evidence. The court did not give an instruction with
reference to circumstantial evidence, neither was such an instruc-
tion requested by counsel for appellant. We think that an in-
struction upon circumstantial evidence should have been given.
But as no exception was reserved to the action of the trial court
in failing to give such an instruction, we cannot reverse the con-
viction upon this ground. But upon an examination of the en-

tire testimony we are not satisfied that the circumstances proven are of such a conclusive character as to exclude every other reasonable hypothesis save that of the guilt of appellant. The only question seriously insisted upon in the brief of counsel for appellant is that the verdict is contrary to the evidence.

Appellant is only a poor, friendless, negro boy, but under the law it is our sworn duty to give and apply to his case the same careful consideration and the same legal principles which we would extend to the case of any other citizen of Oklahoma. The accident of birth and the artificial distinctions created by wealth and society are not recognized by the law. The law places all human beings upon a footing of equality before this court. All are traveling upon the same common level of time to that undiscovered country where all must stand upon the same common level of justice before the Great Judge of the quick and of the dead. This court therefore has neither the desire nor the moral or legal right to consider any man's social condition, wealth, race, or nationality or to look at the color of his skin. The rich, the influential, and the strong can be depended upon to take care of and protect themselves. It is the weak, the poor, and the humble who need the strong arm of the law for their defense. The decisions of courts should be based upon right, and not upon might. It is true that the jury in the first instance are the exclusive judges of the credibility of the witnesses, but their action, even in this respect, is subject to review upon appeal, and this court upon appeal should always consider as to whether or not there is a legitimate basis for the conclusion at which a jury has arrived. In this case, even if all of the circumstances testified to by the witnesses for the state are true, the court must consider as to whether or not these circumstances are of such a conclusive character as to exclude every other reasonable hypothesis save that of the guilt of appellant. We see no reason why we should not accept as true everything testified to by the witnesses for the state, but we are of the opinion that the circumstances of this case are by no means conclusive as to the guilt of appellant. There is no direct evidence of appellant's guilt. The strongest circumstance against him is that when he was arrested in com-

pany with his codefendant, Miles, and charged with the commission of this offense, he made some untrue and contradictory statements. In fact, had it not been for this, we are satisfied he would have been acquitted. We think that Miles, his codefendant, was properly convicted. But we do not think it would be just to send this boy to the penitentiary because he was found in company with Miles, and that some of his statements were found to be untruthful.

Appellant was tried for grand larceny and not for lying. He deserved a good whipping for lying, but a lie, unless told under oath, is not a penitentiary offense. It is true that where a person charged with an offense resorts to false statements, this is highly calculated to arouse suspicion, and may, in connection with other circumstances, justify a jury in finding him guilty. The fact that a man has lied about a matter is always a circumstance against him, to be considered in connection with all of the other facts and circumstances of the case. In the case before us we have an ignorant negro boy who is not shown to have had any previous connection with this matter, found in company with a thief who had just given him one of the stolen bills to have it changed at a store. When they were arrested together and confronted by the officers, appellant became frightened, and did not tell the truth in all that he said. That he did act wrong we freely concede. Even the wisest and best men come far short of perfection. It will not do to judge any man by an angelic standard. If so, none, no, not one, could escape. Courts and juries should make due allowances for the weakness and frailties of human nature, and should always consider the evidence in a case in connection with the intelligence and condition of the defendant. There should be no hesitation as to the infliction of punishment when a defendant is clearly proven guilty, no matter who he may be, but in determining as to whether a defendant is guilty great care should be exercised. The poorer, more friendless, and ignorant the defendant, the greater the care should be to see that no unfairness is done him.

If we will read the twelfth chapter of Genesis we will find that Abram, the father of the faithful, and who was called "The

friend of God," when he became frightened not only told a lie himself, but commanded his wife to do the same thing. The account given in the Bible of this matter is as follows:

"11. And it came to pass, when he was come near to enter into Egypt, that he said unto Sarai his wife, Behold now, I know that thou art a fair woman to look upon:

"12. Therefore it shall come to pass, when the Egyptians shall see thee, that they shall say, This is his wife: and they will kill me, but they will save thee alive.

"13. Say, I pray thee, thou art my sister: that it may be well with me for thy sake; and my soul shall live because of thee.

"14. And it came to pass, that, when Abram was come into Egypt, the Egyptians beheld the woman that she was very fair.

"15. The princes also of Pharaoh saw her, and commended her before Pharaoh: and the woman was taken into Pharoah's house.

"16. And he entreated Abram well for her sake: and he had sheep, and oxen, and he-asses, and men-servants, and maid-servants, and she-asses, and camels.

"17. And the Lord plagued Pharoah and his house with great plagues because of Sarai, Abram's wife.

"18. And Pharaoh called Abram, and said, What is this that thou hast done unto me? Why didst thou not tell me that she was thy wife?

"19. Why saidst thou, She is my sister: so I might have taken her to me to wife: now therefore behold thy wife, take her, and go thy way.

"20. And Pharaoh commanded his men concerning him: and they sent him away, and his wife, and all that he had."

Abram acted in a much more reprehensible manner than this appellant did. This shows conclusively that fright, as well as guilt, is often the cause of falsehood. We think this is a reasonable explanation of all of the circumstances in evidence against appellant. Of course if it had been shown that appellant had been acting in connection with his codefendant, Miles, prior to the time the false statements were made, this explanation would not be reasonable, and the false statements made in connection with the other facts might have sustained the verdict.

The fact that appellant has no influential friends interested in his behalf, and that it will make no difference to the community as to whether or not this negro boy is sent to the penitentiary,

does not in the least appeal to us. There is a question of moral and legal right involved which we cannot ignore. We therefore feel it to be our duty to set aside this verdict so far as appellant is concerned and grant him a new trial.

The judgment of the lower court is therefore reversed, and the cause remanded.

ARMSTRONG, P. J., and DOYLE, J., concur.