### F. N. Potter v. The State.

#### No. 5564. Decided December 10, 1919.

**1.—Libel—Indictment—Innuendo—Explanatory Averments—Pleading.**

Where, upon trial of criminal libel, the indictment failed to allege by *innuendo* or explanatory averment wherein the alleged libelous matter was

a libel, said libelous publication not being sufficient in itself the same was bad on motion to quash, and article 472, Vernon's C. C. P., know as the common-sense indictment act of 1881 is not sufficient. Following: McKie v. State, 37 Texas Crim. Rep., 544, and other cases.

### 2.—Same—Jury and Jury Law—Prejudice—Opinion—Voir Dire.

Where the alleged libelous matter was a severe attack and criticism of Jews generally, and it appeared that there were four or five members of the jury who belonged to their race and who would have admitted that they were prejudiced against the publisher of said libel, the defendant should have been permitted to question them on their *voir dire*, and challenge them for cause, as prejudice is not to be confounded with mere opinion.

Appeal from the County Court of Bexar. Tried below before the Hon. Nelson Lytle, judge.

Appeal from a conviction of criminal libel; penalty, seven months confinement in the county jail.

The opinion states the case.

No brief on file for appellant.

*Alvin M. Owsley*, Assistant Attorney General, for the State.— On question of motion to quash: Gonzalez v. State, 58 Texas Crim. Rep., 141, 124 S. W. Rep., 938; Belo v. Wren, 63 Texas, 686; Morton v. State, 3 Texas Crim. App., 310; Smith v. State, 39 Texas Crim. Rep., 320.

On question of challenge for cause: Loggins v. State, 12 Texas Crim. Rep., 65; Carter v. State, 45 Texas Crim. Rep., 430; Collins v. State, 77 Texas Crim. Rep., 156, 178 S. W. Rep., 345; Merkel v. State, 75 Texas Crim. Rep., 551, 171 S. W. Rep., 740; Armstrong v. State, 34 Texas Crim. Rep., 248; Bass v. State, 59 id., 186; Cooper v. State, 72 id., 266.

LATTIMORE, Judge.—Appellant was convicted of criminal libel in the County Court for Criminal Cases, of Bexar County, Texas, and his punishment fixed at seven months confinement in the county jail.

The indictment in the case is as follows: "IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS: The Grand Jurors for the County of Bexar, and State of Texas, duly organized as such at the October Term, A. D. 1917, of the District Court of the 37th Judicial District of Texas, in and for said County, upon their oaths in said court, present that on or about the 21st day of July, A. D. 1917, in the County of Bexar and State of Texas, F. N. Potter, with intent to injure J. D. Oppenheimer, did unlawfully, wickedly and maliciously publish, sell and circulate a malicious statement in printing and writing of and concerning one J. D. Oppenheimer and affecting the reputation of the said J. D. Oppenheimer to the tenor following, to wit:—

VERY SUCCESSFUL FIRE

Anyone would think that the weather of late was hot enough naturally without trying to make it more so by artificial means but it never gets too hot for a nest of Jews when they can figure out a profit from the ruins of destroyed property.

This *if* the *cae* of the big Oppenheimer fire of last Saturday in, San Antonio, when, after much patience, perseverance and considerable coal oil and 24-hour old rot gut whiskey they finally succeeded in their hellish design to destroy the 4 story brick fire trap on Commerce Street in which they did several kinds of business on a wholesale plan but the firemen confined their unholy efforts to their own property.

Insurance to the tune of $300,000, principally on a liquor stock that had been sold down pretty close recently, furnished the motive for the crime but from the freely expressed opinion of some prominent citizens of the Alamo City while the fire was trying to eat its way into the big building of the San Antonio Drug Company, they will have a hard time to make the collection. Had the Drug company been caught in this trap explosions would have occurred and all buildings and business in the wholesale district more or less damaged.

About the only way to keep a Jew from burning his property is to refuse him insurance and in this case we seriously doubt if the Oppenheimer Bank & Booze Company, Limited, succeeds in collecting the nicely estimated profit from their self-destroyed property. They ought not.

Note—we have looked up the libel law governing above cases and find the following universal opinion which is still in effect: "That country newspapers are entitled to accuse Jews of incendiarism even though it be shown conclusively, that no insurance was being carried at the time of said fire, because it has been proved that goods has been sold at a rattling good profit after having gone through the first degree of a grand fire even when no insurance had been taken out and the stock was a total loss." (Opinion by Judge Chesty, Chief Justice of corpulent law, page 19c; paragraph $9.93; rehashed, digested (Kang, court), and marked down to below cost in every department.

the said F. N. Potter meaning by the aforesaid written and printed and published and circulated statement to charge that the said J. D. Oppenheimer to whom the same refers to and meaning thereby to convey the idea that the said J. D. Oppenheimer had been guilty of the penal offense of Arson against the peace and dignity of the State.

Geo. C. Eichlitz,

Foreman of the Grand Jury."

Upon the back of this indictment appear the names of J. D. Oppenheimer, Henry Oppenheimer, Louisa Oppenheimer, Adelarde Oppenheimer, and others, as witnesses.

The Appellant moved to quash the indictment, because the same charged no offense against the laws of this State, specifying objections thereto. We think the motion well founded. It will be seen by an examination of the allegations of said indictment, that J. D. Oppenheimer is nowhere referred to by name in the alleged libelous publication, nor is the language therein used susceptible of the construction that J. D. Oppenheimer, rather than some of the other Oppenheimers, is referred to or meant by the expressions contained in said publication, in the absence of some explanatory or *innuendo* averments in the indictment. It is not even alleged in the indictment that the said J. D. Oppenheimer was a Jew, or that he was in any way connected with any business in San Antonio, or that on or about the Saturday before said publication, any fire occurred in any house owned or controlled by said J. D. Oppenheimer, or said Oppenheimer and others. We are aware of the fact that Section 13 of what is called the "common-sense" indictment Act of 1881, and which is now Article 472 of Vernon's C. C. P., says in general terms that it is not necessary to set forth any intrinsic facts for the purpose of showing the application to the libelled party of the defamatory matter upon which the indictment is founded, and that it is sufficient to allege generally that the same was published against him or concerning him; but an inspection of the various cases of libel which have been before our courts will reveal that without exception, as far as we are informed, where the alleged libelous matter is not such as to make its references and meaning clear and unmistakable, resort has been had to explanation and innuendo.—McKie v. State, 37 Texas Crim. Rep., 544; Nordhaus v. State, 40 S. W. R., 804; Byrd v. State, 38 Texas Crim. Rep., 630; Squires v. State, 39 Texas Crim. Rep., 96.

The name "Oppenheimer" occurs twice in the alleged libellous matter set out in the indictment in the instant case; once referring to "the big Oppenheimer fire of last Saturday," and once speaking of the "Oppenheimer Bank & Booze Company." Reference to the statement of facts shows that the alleged injured party's name does not occur in the name of the firm of which he testified he was a member. The style of said firm was D. & A. Oppenheimer. In the same building with D. & A. Oppenheimer was the Oppenheimer Cigar Co., and also another firm, styled J. Oppenheimer & Co., and the fire occurred in the store of J. Oppenheimer & Co. By referring to our statutes (Branch's Penal Code, Art. 1170) we see that a corporation as such cannot be criminally libelled. These latter statements are made to show the reason in this case for the requirement that there be explanatory or *innuendo* averments in the indictment, in order that the vague, indefinite and impersonal statements in the publication referred to may be first pleaded as referring to J. D. Oppenheimer, as a predicate for proof of that fact.

In view of another possible indictment and trial, we notice another matter complained of by bill of exception. The alleged libelous publication was a severe attack and criticism of Jews generally. On the trial it appeared that there were four or five members of the jury panel who belonged to that race, or were connected with them, and who would have admitted that if they were taken on the jury and it should develop on the trial that appellant had printed an article severely criticising the Jews as a race, they would be prejudiced against such person. Appellant desired to ask these jurors questions disclosing said fact, and to read to them as a part of such questions the alleged libelous matter, for the purpose of challenging said jurors for cause. The court declined to permit said questions and to sustain chalenges for cause of said jurors, for the reason that all of said jurors would state and did state that they could lay aside any prejudice created by such defamatory article and try the case according to law and evidence. In our opinion such jurors were disqualified, and the questions should have been permitted and challenge for cause should have been sustained, if made. Prejudice is not to be confounded with opinion. The latter may be hastily formed, and if a juror on his *voir dire* says he has an opinion, but it is of such character that he can lay it aside and be governed by the law and the evidence he may be held qualified, but prejudice rests upon a different foundation, and if existent in a given case, renders its possessor incompetent. This is true in every case, though in many instances the jurors may answer without thought that they have prejudice, when upon investigation it may be made to appear that they mean an opinion; but once it be admitted that prejudice exists against this particular accused, or any other individual similarly accused, a challenge for cause, if made, should be sustained.

For the reasons above stated, the prosecution is reversed and ordered dismissed.

*Dismissed.*