W. J. BUGG v. THE STATE.

No. 7570.   Decided April 9, 1924.

Libel—Information—Place of Libel.

Where, upon trial of libel, the information failed to allege the manner in which the publication of the alleged libel in the county of the prosecution would affect the reputation of the party named in the information, the same was insufficient, and the proof showing that said party did not reside in said county in which the purported libel was circulated, the judgment must be reversed and the cause dismissed. Following: Drozda v. State, 86 Texas Crim. Rep., 614, and other cases.

Appeal from the County Court of Live Oak.   Tried below before the Hon. T. H. Miller.

Appeal from a conviction of libel; penalty, a fine of one thousand dollars.

The opinion states the case.

*Douglas, Carter & Childers,* for appellant.—Cited cases in the opinion.

*Tom Garrard,* Attorney for the State and *Grover C. Morris,* Assistant Attorney for the State.

MORROW, PRESIDING JUDGE.—The offense is libel; punishment fixed at a fine of $1,000.

The information made by E. W. Smith, County Attorney, after the formal part, contains the following averments:

"***that in said (county) of Live Oak, and State of Texas, on or about the 16th day of April, A. D., 1922, W. J. Bugg, did, then and there, without lawful authority, and with intent to injure the reputation of M. P. Dunn, H. E. Odem and Gilbert McGloin, who were then and there members of the Fourth Degree of the Knights of Columbus, a fraternal benefit association, organized as a corporation under Special Charter granted by the General Assembly of the State of Connecticut, unlawfully and maliciously publish and

circulate a writing, purporting to be the act of another person, to-wit, the act of a person whose name is unknown to the said E. W. Smith, of and concerning all members of the Fourth Degree of the Knights of Columbus, a part of which writing is to be the tenor, to-wit:

(Here follows the alleged libelous matter.)

And the said E. W. Smith further says that the effect of the written headline KNIGHTS OF COLUMBUS OATH FOURTH DEGREE was to charge, and it did charge, that all members of the Knights of Columbus of the Fourth Degree, upon their admission thereto, had taken said oath.

And the said E. W. Smith further says that the said M. P. Dunn, H. E. Odem, and Gilbert McGloin were, as aforesaid, then and there members of the Fourth Degree of the Knights of Columbus at the time of the publication and circulation of said writing by W. J. Bugg, and the effect of said writing was to charge that said M. P. Dunn, H. E. Odem and Gilbert McGloin had taken said oath upon their admission into said Fourth Degree of the Knights of Columbus, against the peace and dignity of the State.''

The evidence is in substance this:    The appellant, while addressing a congregation of 150 or more persons upon the subject of ''True Americanism'', read a document entitled, ''Knights of Columbus Oath, Fourth Degree'' in which there was contained the matter set out in the information, a reproduction of which is deemed unnecessary.    Suffice it to say that, if untrue, it was obviously libelous.    It was read from the Congressional Record, 62nd Congress, Vol. 49, part 4, and was a part of a contest against the seating of a member of congress from Pennsylvania in which contest it was charged that the member mentioned had, in the course of his campaign for election, caused the circulation in his district of what purported to be the ''Knights of Columbus Oath, Fourth Degree''.    The context of the writing which was embraced in the contest mentioned was identical with the alleged libelous matter set out in the information in the present case.    It was charged in the contest mentioned that the purported oath was spurious.    The member of congress against whom the charges were made, as shown by the Congressional Record and by the evidence in the present case, disclaimed any connection with the publication and circulation of the matter mentioned and declared that when his attention was called to its circulation in his district, he denounced it and repudiated all connection with it, and advised the destruction of such copies of it as came to notice.    The Congressional Committee to whom the contest was referred, in commenting upon the matter, said:

''This committee can not condemn too strongly the publication of the false and libelous article referred to ` *** and which was the spurious  Knights of Columbus Oath, a copy of which is appending

to the paper. It also condemns the publication of editorials to excite religious prejudice in a political campaign. No man should be prosecuted for his religion, whether he be Catholic or Protestant.''

It was further shown by the evidence that the address by the appellant was made in Live Oak County, and that neither of the persons whose names are set out in the information was a citizen, resident or sojourner of that county.

The pleading is defective in failing to state the manner in which the publication of the alleged libel in Live Oak County would affect the reputation of the parties named in the information. So far as we learn from the averments in the information, the parties named may not have been residents of the State of Texas, as the information is entirely silent upon that subject. In the proof it is conclusive, as stated above, that they did not reside in the county in which the purported libel ,was circulated. The document read, if true, reflected upon all the Knights of Columbus of the Fourth Degree, but its publication in Live Oak County might not affect the reputation of a member of that organization who resided in a distant state or country, or even in a distant county. Therefore, to comply with the degree of certainty necessary in charging a criminal offense, the manner in which the publication of the article which includes a large class of persons would affect the reputation of the individuals named, should be shown in the pleading and the proof. Illustrative of this view is the case of Potter v. State, 86 Texas Crim. Rep., 380, 216 S. W. Rep., 886 and authorities cited; also the case of Drozda v. State, 86 Texas Crim. Rep., 614, from which the following quotation is taken:

''A man who scurrilously attacks the Smiths, Johnsons, Joneses, or the Jews, Gentiles, or Syrians, Democrats, Republicans, Populists, or office holders in general, could not be successfully haled into court and convicted of libel of any particular person, unless there be something in such article which by fair interpretation thereof, tended to bring into disrepute some particular person or persons. In the instant case, the reference in the alleged libelous article is to 'those people whom you call leaders'. There is nowhere any allegation that the parties alleged to have been libeled were known among the people referred to as 'you' as leaders, or that any of the persons seeing such publication could know or conclude that those particular persons were meant.''

For the reason stated, the judgment is reversed and the prosecution ordered dismissed.

*Dismissed.*