## W. E. RILEY v. STATE.

No. A-6409. Opinion Filed May 19, 1928.
(267 Pac. 494.)

J. Q. A. Harrod, for plaintiff in error.

Edwin Dabney, Atty. Gen., for the State.

DAVENPORT, J.    The plaintiff in error, herein-after called the defendant, was convicted in the county court of Caddo county, Okla., on a charge of having possession of a whisky still for the unlawful purpose of manufacturing distilled spirits, and sentenced by the court to confinement in the county jail for 180 days, and to pay a fine of $500. Motion for a new trial was filed and overruled, exceptions saved, and appeal perfected.

The evidence, in substance, is as follows: H. C. Diehl testified that he was the owner of the place on which the still was alleged to have been found; that the defendant had the place rented for that year, but that defendant was not on the place when the still was found, and that he had not seen the defendant on the place since Mr. Oney had been on the place: that wit-ness had gotten Mr. Oney to work the cotton on the place.

George Nixon, sheriff, testified to going to the place and finding an L-shaped dugout that had a large still in it, with two pressure tanks and a barrel of

mash. Defendant, Riley, was not on the place, but he learned he was in Oklahoma City with his family. Witness came to Oklahoma City and arrested defendant, and on the way back, in conversation with him, defendant told the witness that he had sold out and did not have anything to do with the place, and knew nothing about the still being on the place. The still indicated that whisky had been made in it; could not tell anything about when the whisky was made. In the bottom of the still was a gallon or two of mash, and also some stuff that had not drained out. As to the operation of the still, that is purely guess work on my part, or how long it had been there; do not know exactly, because it was connected up and a barrel was full of mash. We arrested one Oney boy and held him for a little while and turned him loose.

Bob Dutcher, William Miligan, and Bud Kerr, testified, in substance, to the same facts as George Nixon, the sheriff, did. All of the witnesses stating that the defendant was not on the place at the time they made the search and seizure, and that when the defendant was arrested he stated that he had sold out and had nothing further to do with the place or anything on the same.

At the close of the state's evidence, the defendant entered the following demurrer:

"Comes now the defendant and demurs to the evidence on the part of the state, for the reason that the same is insufficient to show that the defendant has been guilty of any offense whatever."

The demurrer was overruled, and defendant excepted to the ruling of the court. The defendant then moved the court to instruct the jury to return a verdict of not guilty, which motion was denied, and defendant duly excepted.

The defendant called Henry Haynes as a witness, who testified that he lived three-fourths of a mile from the defendant during the two years defendant had lived on the Diehl farm, that he knew his general reputation for a law-abiding citizen, and that it was good. On cross-examination he said he did not know as to when Mr. Riley sold out, and that he did not know who was in charge of the place at the time the search was made.

Another Mr. Haynes was called, and testified, in substance, that Mr. Riley had lived near them two years; that he did not know the man to whom defendant sold; that defendant had been gone from the place in the neighborhood about two or three weeks when the search was made; that he knew his reputation as a law-abiding citizen, and that it was good.

Defendant, called in his own behalf, testified that there was no still on the place when he left it; that he never did have a still on the place while he lived on it; the roads the officers testified were made on the place were there when he rented it; that he sold out his interest in the crop, stock, and implements on the 20th day of May, prior to the time the officers claim to have searched the farm in June; that after he sold out he had nothing further to do with the place, nor did he have any interest in anything further on the place; that he sold to a man by the name of Jenks, and that Jenks brought one of the Oney boys with him when he came to the place. Defendant further stated that he did not know where Jenks was, and denied that he stated to the sheriff that he had been on the place two days before the search was made.

On cross-examination, he stated he did not know who put the still in the cave; that he positively did not know anything about it at all. He was asked:

"Have you ever been convicted of violating the pro-

hibitory laws? A. No, sir; I never was arrested. I was out at the farm during the time I was farming sufficient to cultivate the crops. I came to Oklahoma City to visit my family on Saturday nights, and usually returned Sundays."

The defendant was excused and subsequently recalled for further cross-examination by the county attorney, and stated that he did not have the Oney boy on the farm looking after his stuff, and that he told the sheriff he had sold out, but he did not remember telling the sheriff that he had sold to the Oney boys; that he sold out to Jenks. The witness was then excused. The testimony was closed, and the defendant moved the court to direct the jury to return a verdict of not guilty. Again the state asked permission to reopen the case to ask defendant further questions, which was granted, and the county attorney propounded the following questions:

"Q. Did you build that cave there on that place? A. No, sir.

"Q. Who did? A. I don't know.

"Q. That cave was not there when you went on that place? A. I suppose it was.

"Q. Did you swear it was? A. No, sir. There was a cave there on the place; there in the woods; the cave I saw was 16 by 8 feet; if the cave you have reference to was put there last February, I don't know it."

The witness Diehl was recalled by the state and asked when the cave was put on the place; he said he had never seen it before the raid; I could not say that the cave was there six months ago.

The case was again reopened on motion of the defendant, and the defendant called to the stand and questioned further. The following questions were submitted to him:

"Q. Was there any still on the place when you moved there? A. No, sir.

"Q. Was the cave over there when you moved there? A. The old cave?

"Q. That cave down where the road led to? A. No, sir.

"Q. You don't know whether there was a still there or not? A. No, sir."

The foregoing is, in substance, all the testimony introduced.

The first, seventh, and the ninth assignments of errors may be grouped together, as they relate to the sufficiency of the evidence. The eighth alleges "error of the court in not instructing the jury on circumstantial evidence."

The eighth assignment will first be considered by the court. It is not denied that the defendant sold his interest in the stock, implements, and crops on the place on May 20th, prior to the search alleged to have been made on the 10th day of June; that the defendant, when the search was made, was living in Oklahoma City, where his family had been residing, and was not on the place or anywhere about the place when the search was made. The proof further shows that two men by the name of Oney were on the place at the time the search was made, and one of them was taken into custody by the sheriff and kept for a short while and then released, neither of whom were called as witnesses in this case. The testimony of the owner of the farm shows that he did not know of the still being on the place or the cave mentioned in the testimony being there. The neighbors living near the farm testified without contradiction as to the reputation of the defendant as to being a good law-abiding citizen.

The county attorney, on cross-examination, without

any objection on the part of defendant, asked the defendant the following question: "If he had ever been convicted of a violation of the prohibitory laws;" and the defendant answered, "No, sir; I have never been arrested." The state was bound by the answer of the defendant. There was no testimony of a contradictory character to show that he had been convicted.

The defendant insists that the testimony in this case is purely circumstantial, and that it was the duty of the court to instruct the jury on the law as to circumstantial evidence even though no request by the defendant was made for such an instruction. In the motion for a new trial, defendant raised the question that it was the duty of the court to have instructed the jury as to the law on circumstantial evidence, which motion was overruled.

The only evidence in any way tending to connect the defendant with the still found was the fact that he had been cultivating the place where the still was found for two years prior to the search of the farm. The evidence of the defendant is undisputed that he had sold out several days before the search was made and had no further interest whatever on the place. Defendant cites the following authorities to sustain his position that it was the duty of the court in this case to have instructed the jury on circumstantial evidence:

In Matthews v. State, 8 Okla. Cr. 676, 130 P. 125, in the first syllabus, the court says:

"Where the case depends on circumstantial evidence alone, the court should instruct the jury that they should acquit the defendant, unless the circumstances proven are of such a conclusive character as to exclude every other reasonable hypothesis save that of the defendant's guilt."

In Willard v. State, 26 Tex. App. 126, 9 S. W. 358, the court said:

"This conviction is based wholly upon circumstantial evidence, and the court, having failed to instruct the jury with regard to that character of evidence, committed error for which the conviction must be set aside."

See Polanka v. State, 33 Tex. Cr. R. 634, 28 S. W. 541.

In this case the court did not instruct the jury with reference to circumstantial evidence, nor did the defendant request the court to give such an instruction. We think that, in view of the testimony in this case, an instruction upon circumstantial evidence should have been given, but, as no request was made by the defendant for an instruction on circumstantial evidence and no exceptions reserved to the failure of the court to give an instruction on circumstantial evidence, we do not feel that the case should be reversed on that ground.

It is further urged by the defendant that the testimony in this case is insufficient to sustain the verdict. Upon an examination of the entire testimony, we are not satisfied that the circumstances proven are of such conclusive nature as to preclude any other reasonable hypothesis save that of the guilt of the defendant.

The judgment of the lower court is therefore reversed and remanded.

DOYLE, P. J., and EDWARDS, J., concur.