## ETHEL STORY v. STATE.

No. A-10932. Dec. 1, 1948.

(200 P. 2d 774.)

A. O. Manning, of Fairview, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, Ethel Story, was charged in the county court of Major county with the illegal possession of intoxicating liquor, was tried, convicted by a jury who returned the following verdict:

"We the jury drawn, empaneled and sworn in the above entitled cause, do upon our oath find defendant Ethel Story guilty, we recommend leniency."

The trial court thereafter sentenced the defendant to serve 30 days in the county jail and pay a fine of $50 and costs, and she has appealed.

It is first argued that the trial court erred in refusing to give an instruction on circumstantial evidence. An instruction on circumstantial evidence was submitted to the court by the defendant with the request that it be given.

In order to properly consider this assignment of error, it is necessary that the evidence be. reviewed.

The defendant lived in the town of Fairview. At the time of the seizure of the whisky in controversy, her premises were occupied by Pat Topley, Harry Sweet, Ruth Moorehead and her children, and the defendant and her 15 year old grandson.

Homer Compton, deputy sheriff, testified that the defendant's grandson called him over the telephone about 4:30 p.m. and asked him to come to Ethel Story's house as quickly as he could get there; that he immediately drove to the house where the first person he saw was Pat Topley; that he went on around the house and saw

the defendant and her grandson who were crying, and Homer Sweet was there trying to quiet them down. The officer inquired as to the trouble and the defendant asked her to take Pat Topley off the premises; that Pat and defendant were quarreling and defendant ordered Pat to leave; that Pat Topley was drunk; that defendant did not want to sign a complaint against Topley but finally said she would sign a complaint and the officer took him to jail; that Pat started talking to him and told him there was plently of whisky there on the place and told him where it was; that he procured a search warrant, went back and searched the premises and found the liquor buried in a haystack. The officer then testified that he had a conversation with Mrs. Story in which she said that it was Pat's whisky; that it had been her money, but Pat had invested it in whisky.

The officer then testified:

"Q. From your conversation with Mrs. Story, you know to whom the whisky belonged? A. From the conversation, it was hers. She said it was her money that bought the whisky. Q. Where did you find this whisky? A. Out by the alfalfa hay bales. Q. Where is that relative to the house? A. Northeast of the house. Q. How far from the house? A. 100 feet or less. Q. On the same premises? A. Yes, sir."

The witness testified that Topley had severely beaten the defendant and her grandson before he arrived and the witness called a Doctor who came to her home and administered to her.

Harold Wiley testified that he was the sheriff of Major county and assisted in making the search of the premises where defendant lived; that various other persons also lived on these premises. The officer, after testifying that he went to the house, further testified:

"Q. Who did you find there? A. Ethel Story, lying on the bed, Harry and the boy. Q. Did she tell you anything about any whisky, that was there? A. She told me it was Pat's whisky. Q. Did she say whether or not she was going to file charges against Pat? A. I never talked about that; after we made the search, we went back in and talked with her about Pat, she was going to file charges against him. Q. She was sick at the time? A. She was lying down. Q. Now, Mr. Wiley, did you know how many others were living on these premises at that time? A. Yes, what I heard. Q. Harry Sweet was there? A. Yes, sir. Q. Pat Topley was there? A. Yes, sir. Q. Mrs. Story told you at the time you first went there that it was Pat's whisky. A. That is right."

On cross-examination, he further testified:

"Q. In searching for this liquor, she said it was Pat's whisky? A. Yes, sir. Q. She told you to get Pat away and also his stuff? A. Yes, sir. Q. She said for him to be locked up? A. Yes."

The sheriff further described the various buildings on the premises where the search was made which included the house occupied by the defendant, a two room apartment house occupied by Ruth Moorehead and her children, a chicken house, a cow barn, and a garage operated by Harry Sweet where Pat Topley was also employed as a mechanic. The liquor in question was found by the officers in an old milk can buried under the hay near the cow barn.

The defendant testified in her own behalf that she owned the premises which were searched by the officers; that Pat Topley roomed and boarded with her, fed and milked her cows and worked in the garage with Harry Sweet repairing cars; that on the day of the incident in question, Pat Topley came to her house in a drunken condition; that she scolded him and asked him where he

got his liquor; that he told her he had some hidden in the hay; that she had told him not to bring any liquor on the place, and after her fuss with him on that occasion ordered him to get off her premises and stay off; that she started to call the sheriff, at which time she was struck by Topley and knocked to the floor; that in a few minutes, the officers arrived and she directed them to take Pat Topley off the premises. She specifically denied owning the whisky or having anything to do with it.

On cross-examination, when asked as to whether she told one of the officers that it was her money but Pat's whisky, she answered:

"A. I might have told him that, as I had been loaning Pat money, from time to time, which he had not paid back, it was money that he had borrowed from me."

Harry Sweet testified that he had a repair shop on defendant's premises where he overhauled automobiles and did carpentry work; that Pat Topley worked on a commission in the garage with him; that on September 9, 1946, Pat was in an intoxicated conditon and he overheard a conversaton between Mrs. Story and Pat, with reference to some liquor; that he heard the defendant tell Pat to get the liquor and get off the place and not come back. He was there when the officers made the search. He was then asked.

"Q. Whose liquor was that. A. Pat Topley's."

It is well settled that where a case depends entirely on circumstantial evidence, the court should direct the jury to acquit the defendant, unless the circumstances exclude every other reasonable hypothesis save that of the defendant's guilt. Riley v. State, 40 Okla. Cr. 135, 267 P. 494; Matthews v. State, 8 Okla. Cr. 676, 130 P.

125; Ritter v. State, 84 Okla. Cr. 418, 183 P. 2d 257.

It has been held that a confession of guilt is direct evidence, and where one charged with crime makes a confession of guilt, it is not necessary to give an instruction on circumstantial evidence. Dennard v. State, 83 Okla. Cr. 286, 176 P. 2d 831.

However where the statement by the defendant does not amount to a confession of guilt, but is an admission of fact that would tend to incriminate defendant, such admission is circumstantial evidence only, and where all the other evidence is circumstantial, it becomes incumbent upon the trial court to properly instruct the jury on circumstantial evidence.

As we view the record, the evidence against the accused is wholly circumstantial and the trial court erred in refusing to give the defendant's requested instruction on circumstantial evidence.

The case is therefore reversed and remanded for new trial.

BAREFOOT, P. J., and BRETT, J., concur.